COUNTY OF YORK

v.

PENNSYLVANIA OFFICE OF OPEN RECORDS and Ted Czech.

Appeal of: Ted Czech.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2010.
Decided Feb. 16, 2011.

Niles S. Benn and Terence J. Barna, York, for appellant.

Michael W. Flannelly, Solicitor, York, for appellee County of York.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.[1]

OPINION BY Judge PELLEGRINI.

Ted Czech (Requester) appeals from the order of the Court of Common Pleas of York County (trial court) reversing the final determination of the Pennsylvania Office of Open Records (OOR), which held that Section 708(b)(18) of the Right–to–Know Law (RTKL)[2] required the County of York (County) to release destination addresses or cross-street information with its 911 time response logs.

---

1. This case was decided before Senior Judge Flaherty's retirement on December 31, 2010.

2. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(18).

Requester, a reporter for The York Daily Record, submitted a right-to-know request to the County seeking copies of "time response logs from York County 911 for December 2008 and January and February 2009 with addresses included, i.e., where the units dispatched were headed." (Reproduced Record (R.R.) at 3a). By letter dated April 14, 2009, the County informed Requester that his request was being denied to the extent that he requested destination addresses. According to the letter, the County defined time response logs as including only the following information:

The time the call was received by the 911 Center

The time the dispatcher contacted or dispatched the appropriate agency for response

The time the appropriate agency responded

The time the appropriate agency arrived on the scene

The time the appropriate agency went available

(R.R. at 4a). Requester was told to inform the County if he still wished to receive copies of the time response logs without addresses. The County sent Requester a follow-up letter dated April 15, 2009, stating simply that "[t]he section of the new [RTKL] that applies to time logs can be found at Section 708(18)(sic)." [3] (R.R. at 5a).

Requester filed an appeal with the OOR to which he attached a copy of an alleged time response log from Lancaster County containing addresses. Requester also alleged in his appeal that the County's Department of Emergency Services maintained an incident status page on the internet containing destination address information. The OOR invited both parties to submit additional information in support of their positions, and the County submitted the affidavit of Cindy Dietz (Director Dietz), its 911 Director. In that affidavit, Director Dietz stated, "I do not contend that I cannot produce addresses." (R.R. at 9a). Rather, she insisted that time response logs did not include addresses because the alleged industry definition of the term did not include addresses. In support of this position, Director Dietz alleged that the Pennsylvania Chapter of the National Emergency Number Association (PA NENA) defined the term exactly as the County did in its April 14, 2009 letter to Requester; however, she failed to include a citation to any document that would support this proposition. Instead, she simply claimed that the County was not required to produce the addresses under Section 708(b)(18) of the RTKL. The County also supplied the OOR with a copy of the House Legislative Journal from February 11, 2008, documenting a legislative discussion between Representative Fairchild and Representative King during which the latter stated that he believed addresses would not be included in the RTKL's use of the term "time response logs."

On May 22, 2009, the OOR issued a final determination granting Requester's appeal. The OOR stated that pursuant to

---

**3.** The County was presumably referring to Section 708(b) of the RTKL which provides, in pertinent part:

**(b) Exceptions.**—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

. . .

(18)(i) Records or parts of records, except time response logs, pertaining to audio recordings, telephone or radio transmissions received by emergency dispatch personnel, including 911 recordings.

65 P.S. § 67.708(b)(18)(i).

Section 903 of the Law,[4] if an agency denied a right-to-know request, it had to provide the specific reasons for the denial as well as a citation to supporting legal authority. The OOR determined that the County failed to provide specific reasons for the denial in this case. It also noted that Section 708(b)(18) of the RTKL exempted from disclosure records from County 911 centers *except* time response logs. Because time response logs were considered public records, the County was required to release all information considered part of the time response logs under the RTKL. According to the OOR, the County bore the burden of proving by a preponderance of the evidence that addresses were exempt from public access, and it failed to meet this burden. The OOR found compelling the fact that the County included addresses in a similar record it made publicly available on the internet, and that Lancaster County 911 included addresses in its time response logs. It indicated that the legislature included time response logs in the definition of public records in order to allow the public to assess the efficiency of emergency responders. Without including the destination address or cross-street information in these records, it would be impossible to determine whether response times were within acceptable parameters, and the time data would be meaningless. The OOR

found that addresses were part of the term "time response logs" and because the County admitted that it possessed destination addresses or cross-street information, it was required to release this information to Requester.

The County appealed to the trial court, which reversed the OOR's decision. As a preliminary matter, the trial court held that the OOR's determination that the County failed to provide specific reasons for denying the request was not supported by the evidence because the two letters the County sent to Requester provided the reason for denial of the request and a citation to supporting legal authority, thereby satisfying the statutory requirements found in Section 903 of the RTKL. As to the substance of the case, the trial court found that the County did not have to release the destination addresses because they were not part of the definition of time response log. Because the RTKL did not provide a definition of the term "time response logs," the court had to look to the rules of statutory construction to determine its meaning. The trial court held that the term qualified as a technical word or phrase because it was used in the RTKL specifically in the context of 911 records.[5] The trial court noted that the only evidence of what this term consisted of was the legislative discussion and PA NENA's definition as provided by the

---

4. Section 903 of the RTKL provides as follows:

> If an agency's response is a denial of a written request for access, whether in whole or in part, the denial shall be issued in writing and shall include:
> (1) A description of the record requested.
> (2) The specific reasons for the denial, including a citation of supporting legal authority.
> (3) The typed or printed name, title, business address, business telephone number and signature of the open-records officer on whose authority the denial is issued.
> (4) Date of the response.

> (5) The procedure to appeal the denial of access under this act.
> 65 P.S. § 67.903.

5. According to Section 1903(a) of the Statutory Construction Act, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a).

County, neither of which included addresses or cross streets.[6] For these reasons, the trial court found that the OOR's conclusion that the term "time response logs" included addresses was erroneous, reversed the final determination of the OOR and sustained the County's appeal. This appeal followed.[7]

On appeal, Requester first argues that the trial court erred in holding that the County had not waived all objections to production of the time response logs and address information because it failed to meet its statutory requirements as outlined in Section 903 of the RTKL. Pursuant to Section 903, the County was required to provide a written denial to Requester containing the specific reasons for denial and a citation to supporting legal authority. We agree with the trial court that the two denial letters, taken as a whole, satisfy these statutory requirements. The initial letter informed Requester that the addresses were not part of the County's definition of time response logs. Simply because Requester did not agree with the County's definition of time response logs does not mean the County failed to provide a reason for denial. In addition, Section 903 does not require an agency to provide a detailed explanation of its denial; it merely states that a specific reason must be provided, and the County satisfied this requirement. The County's

second letter cited as supporting legal authority Section 708(b)(18) of the RTKL. This section outlines the 911 center records exemption and provides the legal authority the County relied upon for its argument. This information provided by the County was enough to satisfy the statutory requirements.

■ Regarding the burden of proof, we agree with Requester that the trial court erred in holding that the County did not have the burden to establish that the information requested was exempt from public access. Section 102 of the RTKL defines "record" as:

Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. The County admits that it receives addresses or at least cross-street information as part of the regular operation of its 911 call center. This information would, therefore, be accessible because there is a presumption under the

---

**6.** The trial court also discussed at length the privacy concerns surrounding the release of address information for crime and domestic abuse victims. However, the County never asserted the right to privacy as a reason for denial in its initial denial letters to Requester or during the appeal to the OOR. The privacy issue was only raised in an amicus brief submitted by the Pennsylvania Coalition Against Domestic Violence. Because the County failed to raise this argument, it is waived. *See Signature Information Solutions, LLC v. Aston Township*, 995 A.2d 510 (Pa.Cmwlth.2010); *Jones v. Office of Open Records*, 993 A.2d 339

(Pa.Cmwlth.2010). In any event, we do not see how privacy concerns are implicated because Requester now only requests cross-street information and never requested the name of the person who called seeking service.

**7.** Our scope of review is limited to determining whether the trial court committed an error of law, violated any constitutional rights, or abused its discretion. *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n. 2 (Pa. Cmwlth.2010).

RTKL that a record in the possession of a local agency, such as the County, is a public record and subject to disclosure unless the agency proves by a preponderance of the evidence that it is exempt under Section 708, exempt under other state or federal law or protected by privilege. Sections 305(a) and 708(a)(1) of the RTKL, 65 P.S. §§ 67.305(a), 708(a)(1). The County clearly has the burden to establish that addresses are exempt under the RTKL. Whether it met this burden of proving that addresses are not part of the definition of time response logs is the main issue on appeal.

■ Regarding this issue, the County asserts that the alleged industry standard definition of time response logs provided by the Pennsylvania chapter of NENA and the specific legislative discussion on the subject support the trial court's conclusion that time response logs do not include addresses or cross-street information. Requester, on the other hand, contends that this information does not support the County's proposition that the requested information is exempt from disclosure because it merely provides an outside agency's alleged definition of the term, not how the agency at issue actually defines the term and maintains its own records. Requester also argues that the legislative journal pages provided by the County contain the personal opinions of a state representative who was not the author or sponsor of the Senate bill that would later become the RTKL and, as such, does not truly evidence legislative intent. Finally, Requester argues that the trial court erred in failing to construe the exception found in Section 708(b)(18) narrowly so as not to restrict the public's access to information. *See Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010); *Lukes v. Department of Public Welfare*, 976 A.2d 609, 618 (Pa.Cmwlth.2009).

We agree with Requester's argument regarding PA NENA's alleged definition. In her affidavit, Director Dietz maintains that she contacted PA NENA to obtain a definition of the term "time response logs" and the definition it provided did not include addresses. However, what someone told another does not establish an industry standard; it is only the response to the question asked by a person who wants a particular response and is not evidence. If there is a national standard, evidence should have been included in the record indicating that such a standard has been adopted by PA NENA or NENA, the national organization of which PA NENA is a subchapter. NENA has promulgated a "NENA Master Glossary of 9–1–1 Terminology," but the term "time response logs" is not among the hundreds of terms defined in this glossary; neither is response log, record or any other possible iteration of these terms. In any event, what somebody said in response to what another person said is not probative when we are determining what the General Assembly intended when it provided that time response logs were public records.

As to the legislative intent behind the RTKL's exemption for 911 records and its use of the term "time response logs," when attempting to ascertain the intention of the General Assembly, a court may consider various matters, including:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

Section 1921(c) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(c). When using the legislative history, our Supreme Court has stated:

> While the Court is not bound to accept the statements made in floor debates, we may look at the legislative history and floor debates held during the consideration and passage of the Act only as guides to the legislative intent in our clarification of this ambiguous and opaque aspect of the statute. Unquestionably the starting point in statutory construction is always the language of the statute. However, when a statute is unclear a court "may embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the Act, the object to be attained, circumstances under which it was enacted and the mischief to be remedied. 1 Pa.C.S. § 1921(c)." *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 517–18, 555 A.2d 72, 74 (1989).

*Boettger v. Loverro*, 526 Pa. 510, 522, 587 A.2d 712, 718 (1991).

The RTKL originated in Senate Bill No. 1 of 2007 with a much different statutory scheme than the current enacted version. Printer's Bill No. 1509, dated October 29, 2007, gutted the original bill and put in place the general outline of the RTKL as it exists today. Interestingly, that bill exempted "911 Recordings" from disclosure. Printer's Bill No. 1646, dated December 10, 2007, allowed recordings to be released if an agency or court found that it would be in the public interest to do so, stating the exemption as:

> Records or parts of records pertaining to audio recordings, telephone or radio transmissions received by emergency dispatch personnel, including 911 recordings. However, a transcript of a recording may be released when the agency or a court determines that the public interest in disclosure outweighs the interest in nondisclosure.

It was not until Printer's Bill No. 1704, dated January 28, 2008, that Section 708(b)(18)(i) was amended to mandate release of 911 "time response logs" to the public upon request. With the history of how the present version came to be, we examine the context of the colloquy upon which the County relies.

The issue of which 911 records were to be released was of particular concern to Representative Fairchild who, in the next House session after the term "time response logs" was added in the Senate, made a motion to suspend the House Rules to offer an amendment that would protect time response logs from access. In explaining the need for the Amendment (No. A05675), he stated that it was to protect the privacy of individuals. The motion failed. House Legislative Journal, February 6, 2008, page 356.

Representative Baker then made a motion to suspend the House Rules to offer yet another amendment, No. A05698, in an attempt to insure that home addresses, in particular those of crime victims, were not released to the public:

> On the motion to suspend, I would like to enunciate several reasons why I am asking for suspension. And I am not going to say that the legislation is necessarily flawed, but I am going to say that I believe it is incomplete. And for the following reasons, I would like to proffer this amendment for the consideration of the members in that it would protect the life, liberty, health, and welfare of every citizen in Pennsylvania from potential

victimization of identity theft. And potentially and specifically another reason that I am offering this amendment is at the request of the domestic violence individuals. The victims of domestic crime are very, very supportive of this amendment. It is their idea. They believe they are going to be exposed to potential perpetrators in the future. Mr. Speaker, there are four components of this amendment, and the reason that I am asking for suspension is to protect personal addresses, dates of birth, license plate numbers, and persons' signatures. These are all very important components to one's identity being stolen. I, personally, am a victim of crime from identity theft. The perpetrator was convicted of over two dozen felonies, and every law enforcement agency has testified before this General Assembly that name, addresses, dates of birth, license plates are all components to the proliferation of identity theft, and we already experience that every 4 seconds, at billions of dollars of cost in America. **Mr. Speaker, the reasons that I am asking for suspension of personal addresses, for consideration of personal addresses to be included in this legislation is that, especially from a crime victim's standpoint, an individual's home address is not included in the list of exceptions, except for those belonging to law enforcement officers and judges. And the public disclosure of the information would place a victim of domestic violence, as well as a victim of crime, in jeopardy of discovery by the perpetrator. Stalking and domestic violence perpetrators, as well as gangs and organized crime, are known to be relentless in pursuing their victims for reasons that include opportunities for revictimization and pressure to drop charges or refuse to testify.** (Emphasis added.)

House Legislative Journal, February 6, 2008, page 357. After much debate over the adverse impact of releasing addresses and other information versus the futility of trying to keep such information private, the House voted not to suspend the rules and consider the amendment.

Representative Maher then made the motion to postpone the House's consideration of Senate Bill No. 1 to address the concerns previously raised. House Legislative Journal, February 6, 2008, page 368. Several members spoke of the problems that the Bill would create for 911 centers. House Legislative Journal, February 6, 2008, page 371. Representative Fairchild, the House member on whose statement the County relies, spoke in favor of postponing the Bill so that the 911 records exemption could be addressed. In particular, Representative Fairchild sought postponement so that the Bill could be amended to add a definition of the term "time response logs" because no one knew exactly how this term ended up in the proposed bill or what it meant. He stated:

> I rise to support that we postpone SB 1 until we can make the corrections that are necessary. I am going to be brief and give you the reasons why I believe, as Republican chairman of the veterans and emergency response committee, that this is absolutely necessary.
>
> First, both bills, HB 443 and 2072, did have the exception to the 911 records in it. We passed it unanimously out of this House. As was testified to earlier, no one knows who changed the language in this bill that is before us today.
>
> *The major change in the bill was that it added three words: "Time response logs" are now required. The problem, Mr. Speaker, is I defy anyone, anyone in this House to find a definition of what a "time response log" is.* It is a

failure on the part of those who were responsible for drafting the amendment to put a definition in SB 1. If our purpose here is to enact clear laws that the public understands, then indeed we have failed, and you will fail if you vote for this.

The 911 centers could accidentally release local State and police investigative information. You tell me how a 911 operator is going to know if there is an undercover operation going on in your community. Tell me how that operator is going to know that information, but yet he or she will be required to have that information listed on the time response log, *perhaps because no one knows what in the world a time response log is.*

House Legislative Journal, February 6, 2008, page 372. (Emphasis added). The motion to postpone consideration of Senate Bill 1 failed and the Bill was sent to the Senate for concurrence. House Legislative Journal, February 6, 2008, page 375. The Senate then amended the Bill, which *still* did not address "time response logs," and sent it back to the House for concurrence.

One week later, on February 11, 2008, Representative King introduced House Amendment No. 05848, which, among other changes not relevant here, amended Section 708 to exempt from disclosure a "record identifying the name, home address or date of birth of child 17 years of age or younger." However, the amendment did not add any other provision regarding personal information or provide a definition of "time response logs." On the amendment, Representative Fairchild engaged in the colloquy upon which the County relies:

Mr. FAIRCHILD. Thank you, Mr. Speaker, and thank you for bringing together this amendment. I think it goes a long way, and I applaud all those on both sides of the aisle here and both sides of the aisle in the Senate for working to bring us where we are this evening. I do have a question on legislative intent. I notice the amendment did not take out the time response logs information, and for legislative intent, I visualize the time response logs as a log of when a call comes into a 911 center, when action is taken and when it is complete. Is that your interpretation, or what is your definition or intent as far as a time response log?

Mr. KING. Mr. Speaker, I would say that is a fair interpretation of legislative intent.

Mr. FAIRCHILD. Thank you. Then just to solidify here, it is not the incident log itself, which has all the detailed information of a caller—the address, the telephone number, the date of birth, all that stuff?

Mr. KING. Mr. Speaker, that is correct.

The Amendment was adopted by the House 199–0 and was sent back to the Senate, which concurred. The Governor signed Senate Bill No. 1 on February 14, 2008.

Given the previous discussion of time response logs and the personal security exemption the week before, the fact that Representative Fairchild's amendment failed to exclude from access "time response logs," and the fact that the other amendments seeking to exempt addresses all failed, Representative Fairchild's statement does *not* evidence any legislative intent. A floor statement is not a substitute for an amendment in determining legislative intent, and what the General Assembly did is more important than what any one member said.

To determine what the General Assembly meant by including "time response

logs" in Section 708(b)(18), we will look to the object it sought to obtain by requiring access to "time response logs" in the RTKL. First, as a general rule, the overall object to be obtained by the new RTKL is to expand public access to government documents and foster openness in government. This Court has stated that the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Bowling,* 990 A.2d at 824. The General Assembly's object in requiring access to "time response logs" was to allow the citizenry "to scrutinize the actions of public officials" by evaluating the efficiency of each county's emergency response to various 911 calls. In order to be able to conduct such an evaluation or, for that matter, emergency responders to monitor their own performance, time response logs must contain the time of the request for service, the address or cross-street information, and when the responder arrived at the scene. Without the address or cross-street information, there would be no way of knowing exactly how far the emergency responders had to travel in response to any given call and, therefore, no way of determining whether or not those response times were deficient. Necessarily then, the term "time response logs" as used in Section 708(b)(18) of the RTKL does not exempt destination addresses or cross-street information.

In this case, the County admits that it maintains destination addresses or at least cross-street information as part of the data it receives from 911 emergency calls. Requester agrees that if cross-street information was provided, that would be a sufficient response to his request. Accordingly, the order of the trial court is reversed, and the County is directed to make available to Requester its time response logs in the same manner in which it maintains these records, with the proviso that it can substitute cross-street addresses for destination addresses.

## ORDER

AND NOW, this *16th* day of *February,* 2011, the order of the Court of Common Pleas of York County, dated December 10, 2009, is hereby reversed. The County of York is ordered to provide Ted Czech its time response logs in accordance with this opinion.