IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| West Chester University of Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 248 C.D. 2015 |
| | : | |
| Bill Schackner and The Pittsburgh Post-Gazette, and Bravo Group, Inc., | : | |
| Respondents | : | |
| | | |
| Bravo Group, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 250 C.D. 2015 |
| | : | No. 251 C.D. 2015 |
| Bill Schackner and The Pittsburgh Post-Gazette, | : | Argued: June 18, 2015 |
| Respondents | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BERNARD L. McGINLEY, Judge (P.)
           HONORABLE P. KEVIN BROBSON, Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: September 17, 2015


          This matter involves three appeals involving the Office of Open Records' (OOR) release of records under the Pennsylvania Right-to-Know Law (RTKL)[1] relating to West Chester University's (WCU) proposed separation from the State System of Higher Education (SSHE).  WCU and Bravo Group, Inc.

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101–67.3104.

(Bravo), a lobbying firm hired by WCU to promote those efforts, petition for review of the OOR's Final Determination that granted in part and denied in part the request of Bill Schackner (Schackner) and the Pittsburgh Post-Gazette (collectively, Requestor) for records relating to WCU's separation from the SSHE and its promotion of Senate Bill 1275 (SB 1275) enabling such separation. Bravo alone also petitions for review of another OOR Final Determination ordering that Requestor be provided the contract between the WCU Foundation (Foundation) and Bravo for lobbying services relating to WCU's separation and educating the public regarding SB 1275. This appeal also involves consideration as to whether Bravo, as a third party, has the right to take an appeal from such a determination because it is neither a "requestor" nor an "agency," the only two types of entities that are specifically authorized to take an appeal under the RTKL.

## I.

This matter began when Requestor submitted a request to WCU for all records detailing the amount paid by the Foundation to Bravo for a campaign to educate the public about and to engender support for the enactment of SB 1275 and for a copy of a contract between Bravo and the Foundation and its staff involving the campaign to secure its adoption. WCU denied the request because it had no responsive documents because those activities were carried out by the Foundation. Requestor appealed to the OOR.[2]

---

[2] Both the Foundation and Bravo participated in the OOR proceedings as interested third parties under Section 1101(c)(1) of the RTKL, 65 P.S. §67.1101(c)(1). Section 1101(c)(1) states, in relevant part, that "[a] person other than the agency or requester with a direct interest in the record subject to an appeal under this section may … file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position."

Requestor argued that WCU possessed those records and, even if not, the Foundation had the records which were generated under a contract to perform a governmental function thereby making them not exempt from disclosure under Section 506(d)(1) of the RTKL.[3] Requestor argued that WCU possessed the records because the Foundation exists to advance its objectives and mission and, as a WCU contractor, provided a governmental function in support of its objectives and mission. Requestor asserted that WCU would have shouldered Bravo's lobbying/public relations work had the Foundation not hired Bravo at the request of WCU's trustees. Requestor submitted Schackner's affidavit attesting that the Foundation hired Bravo at the request of WCU's Trustees, and that the records disclosed in a separate request document meetings between WCU and Bravo regarding efforts to promote the enactment of SB 1275 which would enable WCU to separate from the SSHE.

WCU, Bravo and the Foundation each had both overlapping and distinct reasons why the records need not be disclosed because the information sought is not a document, an activity or a transaction that it had engaged in as an "agency." WCU argued that what was requested are not records under the RTKL because it involves the expenditures and the contract between the Foundation and

---

[3] 65 P.S. §67.506(d)(1). Section 506(d)(1) states that "[a] public record that is not in the possession of any agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act."

3

Bravo, neither of whom are an agency within the meaning of the RTKL.[4] WCU also argued that Section 506(d) does not apply to Bravo's papers because the Foundation and WCU have a contractual relationship involving fundraising and not advocacy, and the requested information does not relate to fundraising of the Foundation and is not ancillary thereto.

Bravo argued that the records do not relate to a Foundation governmental function under its contract with WCU, and that the records contain confidential, proprietary information not subject to public disclosure under Section 708(b)(11).[5] Bravo submitted an affidavit stating that it agreed to provide the Foundation with advocacy and outreach services regarding SB 1275 and it is not providing any fundraising services for the Foundation, and that disclosure of the contract would damage its competitive position in the public relations market.

The Foundation restated WCU's and Bravo's grounds for denying access, but also argued that disclosure would reveal strategy employed to enact legislation that is exempt from disclosure under Section 708(b)(10)(i)(B).[6] The Foundation presented an affidavit of its Executive Director, Richard Przywara,

---

[4] 65 P.S. §67.102. Section 102 defines "record," in pertinent part, as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency…."

[5] 65 P.S. §67.708(b)(11). Section 708(b)(11) states that "the following are exempt from access by a requester under this act: … A record that constitutes or reveals a trade secret or confidential proprietary information."

[6] 65 P.S. §67.708(b)(10)(i)(B). Section 708(b)(10)(i)(B) states that "the following are exempt from access by a requester under this act: … A record that reflects: … The strategy to be used to develop or achieve the successful adoption of a … legislative proposal…."

4

attesting that it engaged Bravo to lobby for the enactment of SB 1275 which is in WCU's best interests, and that the Foundation provided confidential information to Bravo that was incorporated into their agreement along with Bravo's strategy to promote SB 1275.

The OOR issued a Final Determination granting Requestor's appeal and requiring WCU to provide the Foundation/Bravo contract within 30 days. The OOR found that WCU officials serve as *ex officio* Foundation officials as a result of their government positions, and because the Foundation exists solely to advance WCU's interests, any records received by WCU officials are records of WCU subject to the RTKL under *Bagwell v. Department of Education*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013) (holding that the correspondence between a university's board members and the Secretary of Education who serves on the university's board of trustees qualified as records "of" an agency under Section 102 because the Secretary received the records pursuant to the Department's role of supporting and influencing education at the university and helped him to perform his *ex officio* duties of representing the Commonwealth's education interests on the board).

The OOR also determined that WCU, acting through the *ex officio* board members, is a member of the Foundation and the Foundation's by-laws delegate a governmental function to the Foundation, *i.e.*, the management of contracts for the advancement of WCU. Because the Foundation/Bravo contract is a contract that advances WCU's interests by supporting passage of SB 1275, the contract directly relates to the performance of a governmental function and is not exempt under Section 506(d)(1).

The OOR also found that the contract is not exempt under Section 708(b)(10)(i)(B) because the affidavit does not identify what portions of the Bravo contract contains strategic information or how it constitutes "strategy" and conclusory affidavits may not be relied upon to meet an agency's burden of proof. *See Office of the Governor v. Raffle*, 65 A.3d 1105 (Pa. Cmwlth. 2013); *Carey v. Department of Corrections*, 61 A.3d 367 (Pa. Cmwlth. 2013).

The OOR determined that the Bravo contract is not exempt under Section 708(b)(11) of the RTKL because, while the affidavit shows that efforts were taken to keep the contract terms confidential, the conclusory statements therein do not demonstrate that disclosure would cause substantial harm to Bravo's competitive position. *See Commonwealth v. Eiseman*, 85 A.3d 1117, 1128 (Pa. Cmwlth.), *appeal granted*, 106 A.3d 610 (Pa. 2014). The OOR found that the evidence fails to show how the contract's disclosure will cause competitive harm to Bravo. Finally, the OOR held that the entire contract must be disclosed. Bravo's proposal is part of the contract and must be disclosed in its entirety as a financial record under Section 708(c).[7] Only Bravo appeals the OOR's determination at No. 250 C.D. 2014.[8]

---

[7] 65 P.S. §67.708(c). Section 708(c) provides, in relevant part, that "[t]he exceptions set forth in subsection (b) shall not apply to financial records…."

[8] On appeal from the OOR in a RTKL case, this Court's standard of review is de novo and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

## II.

On March 19, 2014, Requestor submitted another request to WCU seeking:

- copies of all written correspondence to and from any of WCU's trustees regarding WCU's secession from the SSHE, SB 1275, attempts to promote passage of SB 1275, and achieving greater autonomy for WCU as a member of the SSHE;

- copies of all written correspondence to and from WCU's President regarding SB 1275, attempts to promote passage of SB 1275, and achieving greater autonomy for WCU as a member of the SSHE;

- copies of all written correspondence between any WCU trustee and any Pennsylvania state senator, state representative, and the governor regarding a state-owned university seceding from SSHE, SB 1275, attempts to promote passage of SB 1275, and achieving greater autonomy for WCU as a member of the SSHE;

- copies of all written correspondence between any WCU trustee and the WCU President or the WCU Foundation's Executive Director regarding a state-owned university seceding from the SSHE, SB 1275, attempts to promote passage of SB 1275, and achieving greater autonomy for WCU as a member of the SSHE;

- copies of all written correspondence between the WCU President and the WCU Foundation's Executive Director regarding a state-owned university seceding from the SSHE, SB 1275, attempts to promote passage of SB 1275, and achieving greater autonomy for WCU as a member of the SSHE; and

- copies of all written correspondence to and from any WCU trustee regarding the hiring and use of Bravo and any other public relations or lobbying firm regarding SB 1275.

7

Following an extension, in May 2014, WCU responded to the request, granting access to 553 pages of records, but denying access to an additional 711 pages of records. WCU redacted information and withheld records, arguing that telephone numbers and e-mail addresses are exempt under Section 708(b)(6)(i)(A),[9] and that other records are exempt as drafts of legislation and policy statements under Section 708(b)(9);[10] as WCU's internal, predecisional deliberations under Section 708(b)(10)(i)(A);[11] as WCU's strategy to pass legislation under Section 708(b)(10)(i)(B); and as correspondence with members of the General Assembly under Section 708(b)(29).[12] Requestor appealed to the OOR and Bravo was granted leave to participate as an interested third party under

_____

[9] 65 P.S. §67.708(b)(6)(i)(A). Section 708(b)(6)(i)(A) states that "the following are exempt from access by a requester under this act: … The following personal identification information: … A record containing all or part of a person's … home, cellular or personal telephone numbers, personal e-mail addresses, … or other confidential personal identification numbers."

[10] 65 P.S. §67.708(b)(9). Section 708(b)(9) states that "the following are exempt from access by a requester under this act: … The draft of a bill, resolution, regulation, statement of policy, management directive, ordinance, or amendment thereto prepared by or for an agency."

[11] 65 P.S. §67.708(b)(10)(i)(A). Section 708(b)(10)(i)(A) states that "the following are exempt from access by a requester under this act: … A record that reflects: … The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a … legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations."

[12] 65 P.S. §67.708(b)(29). Section 708(b)(29) states that "the following are exempt from access by a requester under this act: … Correspondence between a person and a member of the General Assembly and records accompanying the correspondence which would identify a person that requests assistance or constituent services. This paragraph shall not apply to correspondence between a member of the General Assembly and a principal or lobbyist under 65 Pa. C.S. Ch. 13A (relating to lobbying disclosure)."

Section 1101(c)(1) while the Foundation notified the OOR that it would not participate in the appeal.

WCU submitted 1,264 pages of records to the OOR for *in camera* review, along with a statement of its basis for redacting and withholding portions of the records. (Reproduced Record [R.R.] at 622a-626a, 631a-693a.) WCU also submitted the affidavit of its Vice President of Administration and Finance, Mark Mixner, attesting to the identity of its Trustees and Vice Presidents. (*Id.* at 627a). Requestor submitted responses to WCU's and Bravo's submission with an affidavit of Schackner and various exhibits. No hearing was conducted before the OOR.

The OOR issued a Final Determination granting in part and denying in part Requestor's appeal and requiring WCU to provide the records and information not exempt from disclosure as identified in an attached Exhibit A within 30 days. Repeating the reasons that it did in the other appeal, the OOR found that the requested records are WCU records because neither WCU nor Bravo provided any evidence contradicting Requestor's assertion that WCU was using Bravo's services through the Foundation to lobby for support of SB 1275, and there is no evidence that the Foundation had any interest in SB 1275 other than in support of WCU's interests. Because Bravo's activities directly relate to a contract advancing WCU's interests by supporting passage of SB 1275, the records of Bravo's lobbying activities supporting SB 1275 are subject to disclosure under Section 506(d)(1).

However, the OOR found that WCU may withhold telephone numbers and e-mail addresses under Section 708(b)(6)(i)(A) as personal identification information. Nevertheless, the OOR determined that WCU must disclose the names redacted from the header of printed e-mails because the names of public employees are expressly subject to public disclosure and the header of an e-mail is part and parcel of any responsive record.

Based on *in camera* review, the OOR found that the records identified in Exhibit A are exempt from disclosure under Section 708(b)(10)(i)(A) as the specified portions of the records reflect the internal, predecisional deliberations of WCU officials and employees or between WCU officials and employees and members of the General Assembly. However, the records not included in Exhibit A are not exempt because either they are not "internal" because they were sent to or from a party that is not an employee or official of an agency, or they are not "deliberative" because they are factual or do not reflect the deliberations.

The OOR also found that the records identified in Exhibit A are exempt from disclosure under Section 708(b)(10)(i)(B) as strategy to be used to adopt SB 1275, rejecting Requestor's argument that such a record may only be withheld if the legislation has been successfully enacted due to the plain language of the RTKL that records "to be used" to successfully pass legislation are exempt.

Based on its review, the OOR also found that all of the records claimed to be exempt under Section 708(b)(29) as correspondence with a member of the General Assembly, not identified in Exhibit A, were not exempt because they are records of communications between a lobbyist (Bravo) or principal

10

(WCU/Foundation) and a member of the General Assembly for the purposes of influencing legislation (SB 1275) and are specifically subject to disclosure under this provision.

Finally, based on *in camera* review, the OOR found that those items that were redacted or withheld as not responsive in Exhibit A were correctly determined to be not responsive to the records requested. WCU appealed the OOR's Final Determination at No. 248 C.D. 2014; Bravo appealed the Final Determination at No. 251 C.D. 2014.

## III.

As a preliminary matter, with respect to Bravo's appeal at No. 250 C.D. 2014, Requestor has filed a motion to quash arguing that Bravo does not have standing to file and prosecute the appeal. Section 1301(a)(1) of the RTKL, 65 P.S. §67.1301(a)(1), states that "[w]ithin 30 days of the mailing date of the final determination of the appeals officer … a ***requester or the agency*** may file a petition for review … with the Commonwealth Court." (Emphasis added.) As outlined above, Bravo participated in the OOR proceedings as an interested third party under Section 1101(c)(1), but, nonetheless, it is neither a requestor nor an agency and is not authorized to appeal under Section 1301(a)(1) of the RTKL.

A "party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Dauphin County Public Defender's Office v. Court of Common Pleas of Dauphin County*, 849 A.2d 1145, 1148 (Pa. 2004) (citation omitted). Moreover, "when statutory and regulatory provisions designate who may appeal an agency

11

action, only those persons so designated have standing to appeal. *In re 1995 Audit of Middle Smithfield Township*, 701 A.2d 793 (Pa. Cmwlth. 1997) [, *appeal denied*, 727 A.2d 134 (Pa. 1998)]." *Chichester Kinderschool v. Department of Public Welfare*, 862 A.2d 119, 121 (Pa. Cmwlth. 2004).

Regarding the foregoing provisions of the RTKL, this Court has explained:

> We do not read Section 1101 as a formal intervention provision authorizing a person with a direct interest to seek "party" status in a proceeding before Open Records. To the contrary, this section should be construed according to the clear language chosen by the General Assembly. 1 Pa. C.S. §1921(b). The language merely allows a person with a direct interest to supply "information" to an Open Records appeals officer. It does not allow a person with a direct interest to assume a status in the Open Records proceedings on par with either the requester or the agency. The language gives no greater status to those who provide additional information than those who do not. Indeed, even a person who supplies information to an Open Records appeals officer under Section 1101 has no right to appeal the appeals officer's final determination, as that right is conferred only upon "a requester or the agency." Sections 1301(a) and 1302(a) of the RTKL, 65 P.S. §§67.1301(a), 67.1302(a). The person is not even entitled to notice that the requester or the agency has sought judicial review of the final determination. Section 1303(a) of the RTKL, 65 P.S. §67.1303(a) (limiting notification to the agency, requester, and appeals officer). For these reasons, we refuse to construe Section 1101 as a mandatory intervention provision, barring any person with a direct interest and with knowledge of the Open Records proceeding from intervening in a subsequent judicial proceeding if the person did not also seek to provide additional information to the Open Records appeals officer.

12

*Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1032 (Pa. Cmwlth. 2011). While Section 1101(c)(1) permitted Bravo to participate and supply the OOR with information during the OOR proceedings, it does not confer standing to appeal on par with either Requestor or WCU, but allows participation in an appeal when either the requester or the agency has filed a petition for review as provided in Section 1301(a).

In this case, Bravo has alleged that it has an independent reason for appealing the OOR's Final Determination because certain of the records, if made public, would disclose a "trade secret" or "confidential proprietary information" which are exempt from disclosure under Section 708(b)(11). Section 102 of the RTKL defines "confidential proprietary information" as "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." 65 P.S. §67.102.

In turn, both Section 102 of the RTKL and Section 5302 of the Uniform Trade Secrets Act define a "trade secret" as:

> Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy….

13

65 P.S. §67.102; 12 Pa. C.S. §5302. The foregoing definitely implicates a property interest because an actor can be held liable for a theft of a trade secret. *See* Section 3930 of the Pennsylvania Crimes Code, 18 Pa. C.S. §3930. Moreover, under Section 5306 of the Uniform Trade Secrets Act, courts have been instructed to "preserve the secrecy of an alleged trade secret by reasonable means which may include, but are not limited to, granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." 12 Pa. C.S. §5306.

Even though neither WCU nor Requestor filed a petition for review of the OOR's Final Determination under Section 1301(a)(1), Bravo has an independent basis under due process, outside the provisions of the RTKL, to preserve its property interest in protecting the disclosure of its trade secrets or confidential proprietary information because our scope of review is plenary as to facts and/or the right to appeal preserved in the Pennsylvania Constitution.[13] However, that right is limited to the independent basis for appeal relating to those direct identifiable property interests.[14]

---

[13] *See* Pa. Const. art. V, §9 ("[T]here shall also be a right of appeal … from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law….").

[14] While we have doubts as to whether Bravo can appeal, even where the agency or requestor has appealed, to raise issues that do not involve its direct identifiable property interests, Bravo's appeal at No. 251 C.D. 2015 will not be dismissed because Requestor did not seek such relief and its appeal at No. 250 C.D. 2015 perfected review of the OOR's Final Determination at No. AP 2014-0561-R. *See, e.g., Office of Governor v. Bari*, 20 A.3d 634, 646-49 (Pa. Cmwlth. 2011).

14

On the merits, in determining that the entire Bravo contract is not exempt from disclosure as either confidential, proprietary information or trade secrets,[15] the OOR stated:

> Here, while Ms. Krebs attests that efforts were taken to keep the terms of the Bravo contract confidential, the evidence fails to establish that disclosure of the Bravo contract would cause substantial harm to Bravo's competitive position. In this respect, Bravo's affidavit merely concludes that disclosure of the Bravo contract would cause harm and damage Bravo's competitive position, and is similar to the conclusory affidavits which the court in *Eiseman* found insufficient to meet the agency's burden of proof that certain contractual terms were "confidential proprietary information" or "trade secrets." The evidence before the OOR fails to establish *how* disclosure of the Bravo contract will cause competitive harm to Bravo. Based on the evidence submitted, neither the Foundation nor Bravo

---

[15] As this Court has explained, "[w]hether information qualifies as a 'trade secret' is a highly fact-specific inquiry that cannot be distilled to a pure matter of law." *Eiseman*, 85 A.3d at 1126. Nevertheless we have outlined the following considerations:

> Pennsylvania courts confer "trade secret" status based upon the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to his business and to competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. To constitute a "trade secret" under the Trade Secrets Act, it must be an "actual secret of peculiar importance to the business and constitute competitive value to the owner." The most critical criteria are "substantial secrecy and competitive value."

*Id.* (citations omitted).

15

> has met their [sic] burden of proof that the Bravo contract is exempt from disclosure as either "confidential proprietary information" or "trade secrets." *See* 65 P.S. §67.708(a)(1).

(R.R. at 1190a-1191a) (emphasis in original).

Nevertheless, Bravo cites this Court's ability to consider and accept additional evidence when reviewing the OOR's decision[16] and argues that there would be some detriment or harm if its strategy to enact legislation was disclosed because it would likely impair the strategy's effect; those in opposition will employ a counter strategy; its strategy would be less effective and jeopardize the legislation's passage; and, if its legislative strategy is ineffective, it will be less successful in its service area and suffer competitive harm.[17]

However, while we disagree with the OOR that information regarding a legislative strategy must be disclosed just because it is part of the contract, Bravo does not have an interest in claiming that it cannot be disclosed unless it can be

---

[16] *See Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929, 936 (Pa. Cmwlth. 2010) ("[In *Bowling*, t]he Court opined that it could apply the broadest scope of review and look to information beyond the contents of the record to be reviewed as described in the RTKL—*i.e.*, the request, the response, the requester's exceptions to the response, hearing transcript (if any), and the final determination  In other words, the Court can accept additional evidence and make its own factual findings.").

[17] *See Eiseman*, 85 A.3d at 1128 ("In determining whether disclosure of confidential information will cause 'substantial harm to the competitive position' of the person from whom the information was obtained, an entity needs to show:  (1) actual competition in the relevant market; and, (2) a likelihood of substantial competitive injury if the information were released.") (citation omitted).

shown that it was a trade secret or confidential proprietary information. While the result may have been different if WCU had appealed the non-redaction of that portion of the contract as being exempt from disclosure under Section 708(b)(10)(i)(B), Bravo's generalized assertions do not provide the necessary specific factual basis upon which this Court could conclude that the record in question is exempt from disclosure under Section 708(b)(11) as either a trade secret or confidential proprietary information. *See Eiseman*, 85 A.3d at 1126, 1130 ("[A] potentially weaker negotiating position does not establish trade secret status," and "'[a]lthough the court need not conduct a sophisticated economic analysis of the likely effects of disclosure … conclusory and generalized allegations of substantial competitive harm … are unacceptable and cannot support an agency's decision to withhold requested documents.'") (citation omitted).

## IV.

With regard to the remaining separate appeals by Bravo and WCU from the OOR's Final Determination requiring the release of certain documents, we have explained that "[t]he RTKL is remedial in nature and 'is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions.' Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Pennsylvania Department of Education v. Bagwell*, ___ A.3d ___ (Pa. Cmwlth. No. 1138 C.D. 2014, filed April 16, 2015) slip op. at 15 (citation omitted). "Further, the RTKL contains a presumption of openness as to any records within a defined agency's possession." *Id.* (citation omitted).

17

Under Section 305 of the RTKL, records in the possession of an agency are presumed to be public unless they are: (1) exempt under Section 708 of the RTKL; (2) protected by a privilege; or (3) exempt under any other Federal or state law or regulation or judicial order or decree. 65 P.S. §67.305. Because there is a presumption that a record in the possession of an agency is a public record subject to disclosure, the agency has the burden of proving by a preponderance of the evidence that it is exempt under Section 708, exempt under other Federal or state law, or protected by privilege. *County of York v. Pennsylvania Office of Open Records*, 13 A.3d 594, 597-98 (Pa. Cmwlth. 2011). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to 'a more likely than not' inquiry." *Carey*, 61 A.3d at 374 (citation omitted).

An agency may meet its burden through an unsworn attestation or a sworn affidavit. *See Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011); *Moore v. Office of Open Records*, 992 A.2d 907, 908-09 (Pa. Cmwlth. 2010). However, conclusory statements are not sufficient to justify an exemption of public records. *Office of Governor v. Scolforo*, 65 A.3d 1095, 1103-04 (Pa. Cmwlth. 2013). The evidence must be specific enough to permit this Court to ascertain how disclosure of the entries would reflect that the records sought fall within the proffered exemptions. *See Carey*, 61 A.3d at 375-79.

**V.**

**A.**

Bravo claims that the requested records are not "public records"[18] subject to disclosure under the RTKL because they are not WCU records, but records of the Foundation. Specifically, Bravo contends that the OOR misapplied our *Bagwell* decision in determining that the requested records are subject to disclosure under the RTKL. We do not agree.

In *Bagwell*, the requestor sought correspondence received by the Secretary of the Department of Education (Department) that were sent during his service as a member of the Pennsylvania State University (PSU) Board of Trustees (Board) by named individuals who were associated with PSU either as current or former Board members; Board employees; prior Board counsel; a former PSU President; and a Board spokesperson. The Department denied the request in part and provided some responsive records and redacted records. The requestor appealed, but the OOR dismissed the appeal for lack of jurisdiction because PSU is not an "agency" subject to the RTKL so its records are outside the reach of the statute. The requestor appealed and this Court reversed, holding that the Secretary acted on behalf of the Department while statutorily serving as an *ex officio* PSU

---

[18] As noted above, Section 102 of the RTKL defines "record" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business, or activity of the agency." 65 P.S. §67.102. Section 102 also defines "public record" as "[a] record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." *Id.*

19

Board member,[19] so the OOR had jurisdiction over the request directed to the Department seeking correspondence received by the Secretary pursuant to the Department's role of supporting and influencing education at PSU. *See Bagwell*, 76 A.3d at 90 ("Here, there is no allegation that the Secretary is serving in his individual capacity on the PSU Board. Indeed, during oral argument Department's counsel agreed the Secretary acted on behalf of the Commonwealth while serving on PSU's Board, and she acknowledged the Secretary was a 'state actor' serving the Commonwealth's interests.").

Likewise, the OOR found in the instant case:

As set out in the Foundation's by-laws, however, these [WCU] officials serve as *ex-officio* Foundation officials by reason of their government position. Pursuant to *Bagwell*, because these [WCU] officials serve on the Foundation by reason of their status as [WCU]

---

[19] As this Court explained:

The Secretary is statutorily required to serve on the PSU Board by assuming the duties of the State Superintendent of Public Instruction. Section 1 of the Act of March 24, 1905, P.L. 50, *as amended*, 24 P.S. §2536; *see also* Section 1 of the Act of July 23, 1969, P.L. 181 (the Act), *as amended*, 71 P.S. §1037 (whereby all functions of the Department of Public Instruction were transferred to the Department); Section 2 of the Act, 71 P.S. §1038 (stating "the Superintendent of Public Instruction shall *ex officio* be the Secretary of Education"). Five PSU trustees serve in an *ex officio* capacity by virtue of their position within PSU or the Commonwealth, including the Governor and the Secretary.

*Bagwell*, 76 A.3d at 88-89.

officials[20] and because the Foundation exists solely to advance the interests of [WCU],[21] any records received by these [WCU] officials are records of [WCU] subject to the RTKL.

(R.R. at 926a.) Foundations at the various institutions of the SSHE in large part are alter egos of the member universities to carry out activities that those universities want to undertake; otherwise, they would not exist. As a result, the OOR did not err in determining that the requested documents are "public records" subject to disclosure under the RTKL. *See Bagwell*, 76 A.3d at 90 ("The non-agency status of the creator or sender of records does not preclude their public status. Private persons and entities may create correspondence and send it to an

---

[20] *See* Section 5.3.B. of the Foundation's by-laws providing that WCU's President, WCU's Vice President for Advancement, WCU's Vice President for Administrative and Fiscal Affairs, and WCU's Vice President for Student Affairs, serve as four of the six *ex officio* Foundation Trustees for terms concurrent with the terms of their positions at WCU; and Section 7.5 of the by-laws which states that "[t]he Executive Committee shall be composed of the officers of the [Foundation], the President of WCU, the Vice President for Advancement of WCU, the Vice President for Administrative and Fiscal Affairs of WCU, and the Executive Director of the [Foundation]," and that it "shall be authorized to act for the Board between its regular meetings" and "shall have and may exercise all of the powers and authority of the Board in the management of the [Foundation]." (R.R. at 826a-827a, 832a.)

[21] *See* Section 2.2 of the Foundation's by-laws providing that it "is organized exclusively for charitable, scientific, and educational purposes … particularly to promote the interests of [WCU]…," and that it "shall perform the following: A. solicit funds and other property to advance the charitable, scientific, and educational interests of [WCU] in accordance with priorities set by [WCU]; B. receive, manage, and liquidate material assets … to the benefit of [WCU]; C. contribute capital, make loans and grants, and provide other financial assistance to [WCU or] any of its affiliated entities…; … E. manage any contract for the advancement of [WCU]; including the construction, operation, management, and maintenance of student housing facilities, or any other facilities or projects for the benefit of [WCU] and its educational, scientific, and charitable purposes…; … G. manage … upon request and with proper approvals, the endowment fund of [WCU]…." (R.R. at 824a-825a.)

21

agency, thereby potentially making it a record of the agency….") (citations omitted).

**B.**

Bravo next claims that the OOR erred in determining that the records relating to its lobbying activities in support of SB 1275 are subject to disclosure under Section 506(d)(1) of the RTKL which provides that documents produced under a governmental contract are public records because they do not relate to any contract performed by the Foundation for WCU. Specifically, Bravo argues that while it is conceded that WCU has contracted with the Foundation to provide fundraising services and that fundraising is a governmental function under *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496, 505 (Pa. Cmwlth. 2010), *appeal denied*, 20 A.3d 490 (Pa. 2011), the instant contract for lobbying services between the Foundation and Bravo does not relate to this or any other governmental function that WCU has delegated to the Foundation.

As this Court has explained:

> We … interpret Section 506(d)(1) as providing that a record in the possession of a party with whom an agency has contracted to perform a governmental function on behalf of the agency shall be deemed a "public record," and, as a consequence, shall be accessible under the RTKL, so long as the record (a) directly relates to the governmental function and (b) is not exempt under the RTKL….

*A Second Chance, Inc.*, 13 A.3d at 1039.

22

As the OOR properly noted, Section 2.2.E. of the Foundation's by-laws provide that it is to "manage any contract for the advancement of [WCU] … or projects for the benefit of [WCU] and its educational, scientific, and charitable purposes…." (R.R. at 825a.) It is beyond question that managing contracts for the advancement of WCU or managing projects for its benefit and its educational, scientific and charitable purposes are part of its core functions. As the Supreme Court has explained, "[w]e read [Section 506(d)(1)] to connote an act of delegation of some substantial facet of the agency's role and responsibilities, as opposed to entry into routine service agreements with independent contractors." *SWB Yankees, LLC*, 45 A.3d at 1043.

Moreover, contrary to Bravo's assertions, the decision to engage Bravo for lobbying services was made upon the request of WCU's Trustees to the Foundation because the WCU President "was absolutely in support of the idea of breaking away from [SSHE]…." (Supplemental Reproduced Record [Supp. R.R.] at 8b-10b.) As a result, the OOR properly determined that the records relating to the lobbying activities in support of SB 1275 are subject to disclosure under Section 506(d)(1). *See East Stroudsburg University*, 995 A.2d at 506 ("[T]he Foundation is not an agency by definition under the [RTKL]. It is a non-profit corporation, and its Board of Directors' meeting minutes are not subject to disclosure. Nonetheless, because we have determined that the raising and disbursing of funds is a governmental function that the Foundation is performing on behalf of the University, any portion of the meeting minutes relating to the management of those funds are a public record….").

23

## VI.

## A.

In its appeal, WCU first claims that the exception in Section 708(b)(6)(i)(A) relating to personal identification information applies to individual government-issued e-mail addresses so that it properly redacted this information from its records. *See Office of Lieutenant Governor v. Mohn*, 67 A.3d 123, 133 (Pa. Cmwlth. 2013) (holding that the Lieutenant Governor's individual government-issued e-mail address was exempt from disclosure even though it was used to conduct agency business where it was "personal" to him in carrying out his public responsibilities). As a result, the OOR properly determined that e-mail addresses and telephone numbers are exempt from disclosure and Requestor does not contest the OOR's determination in this regard.

However, WCU claims that the OOR erred in determining that the headers on e-mails are subject to disclosure because they do not exist at the time the request is made; rather, they are created when the e-mail is printed to identify who printed the document. Section 705 of the RTKL[22] does not require an agency to create a record that does not exist or to format or organize a record in a manner in which the agency does not do so. While the names of WCU's employees are subject to disclosure under Section 708(b)(6)(ii),[23] the RTKL does not require

---

[22] 65 P.S. §67.705. Section 705 states that "[w]hen responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format, or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record."

[23] 65 P.S. §67.708(b)(6)(ii). Section 708(b)(6)(ii) provides that "[n]othing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other **(Footnote continued on next page…)**

24

WCU to format a record in the manner that a requestor wants it and there is no requirement that the agency identify who printed a particular document. WCU claims that the e-mail headers did not exist at the time that the request was received and that it was under no obligation to provide the record with a header. Requestor does not contest the redaction of the headers to the extent that they merely show the support staff who printed the e-mail and not its recipient or sender. Accordingly, that portion of the OOR's Determination requiring WCU to provide records with unredacted print headers of its support staff is reversed.

**B.**

WCU next claims that the OOR erred in failing to exempt from disclosure under Section 708(b)(9) a number of draft documents[24] that were purportedly prepared by or for WCU and relate to legislation, resolutions and statements of policy regarding WCU's separation from the SSHE and SB 1275. As noted above, Section 708(b)(9) exempts from disclosure "[t]he draft of a bill, resolution, regulation, statement of policy, management directives, ordinance or amendment thereto prepared by or for an agency." 65 P.S. §67.708(b)(9). As this Court has explained, "[m]ost official documents go through some process of revision, and some documents—such as statutes—will always be susceptible of change or amendment. At some point, however, any draft of an official document

_____

**(continued…)**

payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee."

[24] Identified as PPB RTK 622, 624-630, 680, 827, 832, 833-835, 924-938, 941-950, 957-966 and 1041-1022.

25

crosses a threshold and is no longer intended for 'further or additional writing,' even though there is still some possibility that the document will still be changed or appended....." *Philadelphia Public School Notebook v. School District of Philadelphia*, 49 A.3d 445, 452 (Pa. Cmwlth. 2012) (citation omitted).

In asserting this exception before the OOR, WCU merely stated that the "[r]ecords involved in this exception to disclosure should be clear on their face." (R.R. at 624a.) However, as outlined above, the burden was on WCU to prove by a preponderance of the evidence that the relevant records fall within the exception of Section 708(b)(9). Based on our own *in camera* review of the records in question, there is no facial indication that the records at issue are versions of official documents subject to further amendment and we concur with the OOR's determination that "there is no evidence that these draft documents were prepared by [WCU] or contain [WCU]'s proposed changes to drafts. Accordingly, [WCU] has failed to meet its burden of proof to withhold [the] records not identified in Exhibit A from disclosure." (R.R. at 930a.)

## C.

WCU next claims that the OOR erred in failing to exempt from disclosure under Section 708(b)(10)(i)(A) a number of records[25] that were part of its predecisional deliberative process. To establish this exception, an agency must

_____

[25] Identified as RTK PPG 72, 259, 261, 265, 274-275, 277-278, 327, 554, 555-562, 566-567, 568, 569-570, 590, 591-593, 616-630, 654-656, 665-671, 714, 751, 776-777, 781-782, 784-797, 816-818, 828-835, 923, 939, 940, 967-1009, 1017-1019, 1024-1026, 1027-1028, 1033-1037, 1039-1040, 1041-1058, 1060-1073, 1078-1085, 1086-1093, 1094-1101, 1102, 1103-1104, 1114-1119, 1121-1132, 1137-1139, 1145-1148, 1151-1154, 1155, 1156-1162, 1163, 1164-1167, 1177-1178, 1181-1189, 1190-1192, 1197-1248, 1249-1259 and 1260-1262.

show: (1) the information is internal to the agency; (2) the information is deliberative in character; and (3) the information is prior to a related decision and, thus, "predecisional." *Carey*, 61 A.3d at 379. "Only information that constitutes 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice' is protected as 'deliberative.'" *Id.* at 378 (quoting *In re Interbranch Commission on Juvenile Justice*, 988 A.2d 1269, 1277-78 (Pa. 2010) (quotation omitted)). Records satisfy the "internal" element when they are maintained internal to one agency or among governmental agencies. *Id.* Further, as this Court explained:

> To qualify for exception under the Predecisional Deliberative exception, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. First, agencies must show the communication occurred prior to a deliberative decision. Second, agencies must submit evidence of specific facts showing how the information relates to deliberation of a particular decision. Agencies may meet this burden by submitting an affidavit that sets forth sufficient facts enabling a fact-finder to draw its own conclusions.

*Id.* at 379 (citation omitted).

However, before the OOR, WCU stated that it "redacted and excepted records that involved its predecisional deliberations that relate to considering the University's continued status within SSHE. The records excepted relate to the inherent policy considerations as well as what course of action would be most prudent." (R.R. at 625a.) Because WCU did not submit evidence of specific facts showing how this information relates to the deliberations regarding its continued

27

status within SSHE, the OOR properly found that WCU failed to sustain its burden of proving by a preponderance of the evidence that the foregoing records are within the Section 708(b)(10)(i)(A) exemption. Moreover, WCU failed to identify the operative decision by which these records are exempt as "internal, predecisional deliberations." *See Carey*, 61 A.3d at 380 ("DOC failed to establish that all communications, including emails, texts, phone messages, and faxes are deliberative or pre-date an operative decision. Agencies must identify an operative decision. Also, as with all RTKL exceptions, agencies must show the connection between the information and the grounds for protection. Because DOC did not establish the Predecisional Deliberative exception, DOC cannot withhold responsive records on this basis.").

**D.**

WCU next claims that the OOR erred in failing to exempt from disclosure under Section 708(b)(10)(i)(B) a number of records[26] that were part of its "strategy to be used to develop or achieve the successful adoption of a … legislative proposal…." In asserting this exception before the OOR, WCU claimed that "[t]he records subject to this exception relate to the strategy to develop a successful legislative proposal both prior to and after [SB] 1275 was

_____

[26] Identified as RTK PPG 28-37, 292, 325-327, 569-570, 590, 617-620, 624-630, 631-632, 640, 653, 751, 775, 787-797, 816-818, 874, 888-903, 908-918, 919-920, 922, 1020, 1021, 1133-1135, 1140-1143, 1149-1150, 1151. With respect to RTK PPG 292, our *in camera* review of the records showed that, as alleged by WCU, the OOR determined that WCU properly redacted part of RTK PPG 293, but that nothing was redacted on that page and WCU did redact a portion of RTK 292. With respect to RTK PPG 653 and 775, it is the same e-mail that the OOR determined to be exempt from disclosure under this exception at RTK PPG 571. Accordingly, Exhibit A to the OOR's Final Determination should be amended to include RTK PPG 292 as redacted and exclude RTK PPG 293, and to include RTK PPG 653 and 775.

28

introduced…." (R.R. at 625a.)[27]  On appeal, WCU generally argues that the OOR was required to exempt entire or related records where it applied the exception to portions of such records.

However, the OOR was specifically empowered to only redact those portions of a document that were exempt from disclosure under Section 708(b)(10)(i)(B).  Section 706 of the RTKL states, in relevant part:

> If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access.  The agency shall not deny access to the record if the information which is not subject to access is able to be redacted….

65 P.S. §67.706.  In light of the foregoing, the presumption that all records in the possession of an agency are public, and the tenet that the exceptions to disclosure of public records must be narrowly construed, we reject WCU's assertion that the OOR erred in failing to exempt the identified parts of records that were otherwise found to fall within the Section 708(b)(10)(i)(B) exception.

---

[27] We reject Requestor's assertion that the exception in Section 708(b)(10)(i)(B) can only be claimed by agencies that have the ability to enact legislation.  While the stated exceptions are to be narrowly construed, there is no such limitation in the RTKL and we will not add it to the statute where the General Assembly has chosen not to do so.  *See, e.g., Summit School, Inc. v. Department of Education*, 108 A.3d 192, 199 (Pa. Cmwlth. 2015) ("However, we have no authority to add or insert language into a statute, and 'it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.'") (citations omitted).

**E.**

WCU next claims that the OOR erred in failing to exempt from disclosure under Section 708(b)(29) a number of records[28] that are "[c]orrespondence between a person and a member of the General Assembly and records accompanying the correspondence which would identify a person that requests assistance or constituent services…." In asserting this exception before the OOR, WCU claimed that "[t]hese records are self-explanatory and should be excepted from disclosure." (R.R. at 626a.) As the status of the parties involved in the communications are not readily identifiable from either the foregoing proffer or *in camera* review of the records themselves, they are not sufficient, standing alone, to sustain WCU's burden of proving that the records are exempt from disclosure. *Scolforo*, 65 A.3d at 1103-04. As a result, we reject WCU's assertion that the OOR erred in failing to exempt the cited records under the Section 708(b)(29) exception.

**F.**

Finally, WCU claims that the OOR erred in ordering the disclosure of a number of records[29] that are purportedly not responsive to Requestor's request. However, WCU gave no reason as to why the records are not responsive before the OOR. (R.R. at 622a-626a, 666a-667a, 674a-677a, 678a, 682a-683a, 688a-689a, 691a-693a.) Moreover, WCU failed to include this claim in its Petition for Review

---

[28] Identified as RTK PPG 908-922; however, WCU acknowledges that RTK PPG 921 was already found to be properly withheld under the Section 708(b)(10)(i)(B) exception.

[29] Identified as RTK PPG 839-845, 967-1009, 1027-1029, 1086-1101, 1177-1178, 1181-1189, 1192, 1223-1229, 1235-1241, 1250-1251.

or in the Statement of Questions Involved portion of its brief filed in this Court. As a result, any claim of error in this regard has been waived. Pa. R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby….").

Accordingly, the OOR's Determination is affirmed in part and reversed and remanded in part in accordance with this opinion.

_____
DAN PELLEGRINI, President Judge

31

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| West Chester University of Pennsylvania, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| | : | |
| v. | : No. 248 C.D. 2015 |
| | : | |
| Bill Schackner and The Pittsburgh | : | |
| Post-Gazette, and Bravo Group, Inc., | : | |
| Respondents | : | |
| | | |
| Bravo Group, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 250 C.D. 2015 |
| | : No. 251 C.D. 2015 |
| Bill Schackner and The Pittsburgh | : | |
| Post-Gazette, | : | |
| Respondents | : | |

**O R D E R**

AND NOW, this 17th day of September, 2015, that portion of the Office of Open Records' (OOR) Final Determination at No. AP 2014-0834-R requiring West Chester University of Pennsylvania to provide records with unredacted print headers of its support staff is reversed and the case is remanded to the OOR for such redaction; Exhibit A to the OOR's Final Determination at No. AP 2014-0834-R will be amended to include RTK PPG 292 as redacted and to exclude RTK PPG 293, and to include RTK PPG 653 and 775; the Final Determinations at Nos. AP 2014-0561-R and AP 2014-0834-R are affirmed in all other respects. The Motion to Quash of Bill Schackner and The Pittsburgh Post-Gazette is denied.

Jurisdiction is relinquished.

_____
DAN PELLEGRINI, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Chester University of      :
Pennsylvania,      :
             Petitioner      :
     :
            v.      :    No. 248 C.D. 2015
     :
Bill Schackner and The Pittsburgh      :
Post-Gazette, and Bravo Group, Inc.,      :
            Respondents      :
     :
Bravo Group, Inc.,      :
             Petitioner      :
     :
            v.      :    No. 250 C.D. 2015
     :    No. 251 C.D. 2015
Bill Schackner and The Pittsburgh      :    Argued: June 18, 2015
Post-Gazette,      :
            Respondents      :


**BEFORE: HONORABLE DAN PELLEGRINI, President Judge**
           **HONORABLE BERNARD L. McGINLEY, Judge (P.)**
           **HONORABLE P. KEVIN BROBSON, Judge**


**DISSENTING OPINION**
**BY JUDGE BROBSON**             **FILED: September 17, 2015**


        I dissent from Part VI.D of the majority opinion. There, the majority

examines West Chester University's (WCU) claim that the Office of Open Records

(OOR) erred in its review and partial redaction of certain records under

Section 708(b)(10)(i)(B) of the Right to Know Law (RTKL).[1] The majority claims

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(10)(i)(B).

that WCU simply argues on appeal that OOR, once it found that a record included exempt information, must exempt the entire record—*i.e.*, that OOR could not redact. I respectfully disagree with the majority's characterization of WCU's position.

Section 708(b)(10)(i)(B) of the RTKL exempts from disclosure "[a] record that reflects . . . [t]he strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation." On appeal, WCU notes that OOR properly redacted portions of records under this exemption. WCU claims, however, that in some cases, OOR failed to explain why it redacted some portions of documents under the strategy exemption but not others, claiming that there is no difference in character or content between the redacted and unredacted material. WCU also claims that, in some cases, OOR's selective redaction of portions of email strings, rather than the entire email string, was arbitrary, because the unredacted material was part and parcel of a continuum of communication about strategy relating to the proposed legislation.

Based on my review of the disputed records and OOR's redactions, some of WCU's contentions have merit. For this reason, I would conclude that the records identified by the following page numbers, which OOR did not redact, should, like the redacted material, be exempt under the strategy exemption in the RTKL: RTK PPG 28-36, 590, 617-20, 631-32, 640, 751, 874, 919-20, 922, 1020-21, 1140-43, 1149-51.

_____
P. KEVIN BROBSON, Judge

PKB-2