# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Smart Communications Holding, Inc., :
         Petitioner :
               :
      v.         :   No. 80 C.D. 2019
               :   Submitted: May 15, 2020
Bruce Wishnefsky,       :
        Respondent   :


**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** Judge
       **HONORABLE ANNE E. COVEY,** Judge
       **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**       **FILED: July 6, 2020**


  Smart Communications Holding, Inc. (SmartCOM) petitions for review of a Final Determination of the Pennsylvania Office of Open Records (OOR) dated December 27, 2018, which granted an appeal filed by Bruce Wishnefsky (Requester). Requester had filed a Right-to-Know Law[1] (RTKL) request (Request) with the Department of Corrections (Department), seeking part of the Department's contract with SmartCOM to provide electronic mail service to state correctional institutions (SCIs). The Department produced a responsive record but redacted portions thereof based on an assertion of confidential, proprietary information and/or trade secrets. The OOR found SmartCOM did not meet its burden of showing the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

exemptions applied and ordered production of an unredacted copy of the record. Upon review, we affirm, albeit on other grounds.[2]

## I. BACKGROUND

On October 13, 2018, Requester, an inmate at SCI-Laurel Highlands, submitted the Request to the Department seeking "the portion of the contract with Smart[COM] . . . that shows the time that Smart[COM] . . . is permitted under the contract to process and forward mail to SCI[-]Laurel Highlands, or if the standard is the same at all SCIs, then that time period." (Reproduced Record (R.R.) at 9a.) On November 5, 2018, the Department responded to the Request, providing Requester with access to a partially redacted document. Specifically, the Department provided Requester with a copy of the Statement of Work (SOW), which the Department stated contained the information Requester sought. According to the Department, paragraphs 6 through 11 of the SOW were redacted to protect confidential, proprietary information and/or trade secrets that are exempted from production pursuant to Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11).

### A. Proceedings before the OOR

Requester, then proceeding pro se, filed an appeal with the OOR, challenging the redactions. SmartCOM filed a request to participate before the OOR on the basis that it was the owner of a record containing confidential, proprietary information or trade secrets. (R.R. at 19a.) SmartCOM also submitted a position statement wherein it stated that paragraph 5 of the SOW provided Requester with the information he

---

[2] "[T]his Court may affirm on grounds different than those relied upon by the court or agency below if such grounds for affirmance exist." *Motor Coils MFG/WABTEC v. Workers' Comp. Appeal Bd. (Bish),* 853 A.2d 1082, 1087 n.9 (Pa. Cmwlth. 2004). *See also McKelvey v. Office of Att'y Gen.*, 172 A.3d 122, 125 (Pa. Cmwlth. 2017) (affirming RTKL appeals officer on alternate grounds).

sought in unredacted form.[3] (*Id.* at 20a-21a.) According to SmartCOM, the redacted paragraphs "do not relate to the time that SmartCOM is permitted to process mail under its [a]greement with [the Department]." (*Id.* at 21a.) SmartCOM asserted the paragraphs that were redacted contain confidential, proprietary information and trade secrets. In support thereof, SmartCOM also submitted a declaration by James Logan (Declaration), an owner and officer of SmartCOM. The Declaration provides, in relevant part, as follows:

> 3. SmartCOM provides communications[-]related products and services to correctional facilities.
>
> 4. On or about September 4, 2018, SmartCOM executed an Agreement for Processing Inmate Postal Mail (the "Agreement") with the Commonwealth of Pennsylvania, acting through the . . . Department . . . .
>
> 5. Pursuant to the Agreement, SmartCOM agreed to convert incoming postal mail sent to the facilities within the [Department] into an electronic document to be delivered to [the Department].
>
> . . . .
>
> 7. Paragraphs 6 through 11 of the [SOW] do not describe or demonstrate the time that SmartCOM is permitted under the Agreement to process and forward mail to SCI[-]Laurel Highlands or other SCIs.
>
> 8. Paragraphs 6 through 11 of the [SOW] describe in detail SmartCOM's method and process of scanning mail and providing electronic copies to [the Department]. More specifically, these paragraphs describe how SmartCOM reviews and organizes information, maintains electronic and hard-copy records, and provides electronic records to [the Department] in a form that is convenient and easy for [the Department] to manage. These paragraphs also describe

---

[3] Paragraph 5 of the SOW provides: "SmartCOM shall retrieve and process incoming Routine Mail and process said mail as outlined herein within twenty-four (24) hours upon receipt, with the exception that for the first sixty (60) days of the Agreement[,] mail processing shall be accomplished within five (5) days of receipt." (R.R. at 10a.)

3

services that SmartCOM provides to [the Department] to enable [the Department] to access and review scanned mail.

. . . .

10. SmartCOM does not share the information described in paragraphs 6 through 11 of the [SOW] with anyone other than the senior officers of SmartCOM: myself, Jonathan Logan, and Justin Scott. These officers are each obligated by contract and by fiduciary duties to maintain the secrecy of this information.

11. The information described in paragraphs 6 through 11 of the [SOW] is not publicly available. The Agreement is SmartCOM's first agreement whereby SmartCOM provides postal mail conversion and delivery services through the processes and mechanisms described in paragraphs 6 through 11 of the [SOW]. When SmartCOM executed the Agreement, it informed [the Department] that the Agreement included trade secret and confidential, proprietary information and requested to be notified of any public records request for the Agreement or any of its exhibits. SmartCOM also requested that the information described in paragraphs 6 through 11 of the [SOW] be redacted before being posted on any public forum.

12. SmartCOM has spent significant time and money developing and refining the processes and mechanisms described in paragraphs 6 through 11 of the [SOW].

13. The information described in paragraphs 6 through 11 of the [SOW] derives independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable by proper means by other persons. The processes and mechanisms described in paragraphs 6 through 11 of the [SOW] allow SmartCOM to efficiently perform the tasks required by the Agreement.

14. The disclosure of the information described in paragraphs 6 through 11 of the [SOW] would cause substantial harm to SmartCOM's competitive position in the market. With the information, processes and mechanisms described in paragraphs 6 through 11 of the [SOW], SmartCOM's competitors could avoid spending the time and money that SmartCOM spent to develop and refine the processes and mechanisms. Further, SmartCOM's competitors could use the information to copy more than just SmartCOM's general product and

4

services—the competitors could use the exact processes created and used by SmartCOM.

(Logan Declaration, R.R. at 24a-26a.)[4]

Based upon the Declaration, SmartCOM asserted in its position statement that it satisfied its burden of demonstrating the redacted information was confidential, proprietary information and/or trade secrets. Specifically, it shows, according to SmartCOM, that the redacted information was held in confidence by only three senior officers, and that competitors would copy the methods and processes that SmartCOM invested a significant amount of time and money in developing, which the competitors could unfairly avoid. (R.R. at 22a-23a.) In a footnote, SmartCOM noted that, although "[t]he argument was not raised in the appeal, [] even if the Agreement qualifies as the type of financial record that may not be withheld from disclosure on the basis of the trade secret exemption, the SOW retains the benefit of the exemption," citing this Court's holding in *Global Tel\*Link Corp. v. Wright*, 147 A.3d 978 (Pa. Cmwlth. 2016), in which the Court held that a document attached to a contract does not automatically transform into a financial record subject to disclosure under the RTKL. (R.R. at 21a.)

Based upon the parties' submissions and the OOR's *in camera* review of the redacted paragraphs, which was performed at the request of Requester, the OOR issued its Final Determination granting Requester's appeal. The OOR did not address whether the SOW should be disclosed as a financial record. Instead, the OOR considered only whether the redacted paragraphs were subject to redaction under one of the specified exemptions. The OOR explained that even if the redacted paragraphs were not responsive to the Request, the RTKL does not permit redaction

---

[4] Pages 2 and 3 of the Declaration are out of order in the Reproduced Record.

5

of a responsive record because some of the content is nonresponsive; rather, the redactions must be made pursuant to a recognized exemption. (Final Determination at 4 n.4.) The OOR also found the redacted paragraphs were neither confidential, proprietary information nor trade secrets. While it found SmartCOM took reasonable measures to maintain the confidence of the information, the Declaration by Logan was "not sufficient to show that disclosure would cause competitive harm or that the [SOW] possesses independent economic value." (*Id.* at 8.) The OOR noted that generic or conclusory statements are alone insufficient to satisfy an agency's burden of proving an asserted exemption. Here, the OOR found that the Logan Declaration "largely parrots the language of the test [for confidential, propriety information], only noting in addition that the processes in the redacted paragraphs 'allow SmartCOM to efficiently perform the tasks required by the Agreement' and that competitors could copy SmartCOM's processes and thereby save money developing their own." (*Id.* at 9.) The OOR found this failed "to show that there is competition in the relevant market or that there is an actual likelihood of substantial competitive injury if the information is released." (*Id.*) In addition, the OOR found the Declaration did "not adequately describe the value of the information to the business or any competitors, the amount of money or effort expended in developing the information, or the difficulty any competitors would have in duplicating it," and, as a result, the test for trade secrets also was not met. (*Id.*)

The OOR further found that its *in camera* review did not substantiate SmartCOM's claims, stating:

> As [] Logan attests, paragraphs 6 to 11 of the [SOW] describe the efforts that SmartCOM and the Department must undertake to fulfill the contract requirements, as well as the requirements the Department

6

has for electronic systems. Paragraph 6 consists of specific instructions for how the Department should provide SmartCOM with housing data; Paragraph 7 describes the digital mail files to be provided to the Department; Paragraph 8 governs SmartCOM's retention of the original mail documents; Paragraph 9 describes file aggregation; Paragraph 10 describes the requirements for an electronic application; and Paragraph 11 provides for the distribution of certain hardware to the Department. While these paragraphs contain details regarding the Department's feature requirements for electronic systems and specifications for how SmartCOM will provide the Department with certain information, they contain nothing in the way of propriety technical data or techniques for processing mail. Further, given the level of personalization required by the Department, it is not apparent that there is any broader competitive market for this information. Therefore, because SmartCOM's attestation does not demonstrate the economic value or competitive harm arising from the redacted paragraphs, and because the OOR could not independently discern any, SmartCOM has not demonstrated that the contract may be redacted under Section 708(b)(11) of the RTKL.

(*Id.* at 9-10.)

Accordingly, the OOR granted Requester's appeal and ordered the Department to produce an unredacted copy of the SOW within 30 days. (*Id.* at 10.)

### B. Proceedings before this Court

SmartCOM now petitions for review of the Final Determination. Subsequent to filing its Petition for Review, SmartCOM also filed an Application for Relief in the Nature of a Motion to Supplement the Record, wherein it sought to invoke this Court's *de novo* review by providing an affidavit of Logan (Affidavit). The Affidavit, SmartCOM claimed, addresses all of the OOR's concerns and supplies additional details relative to SmartCOM's position. When no response or objection was received from Requester, the Court granted SmartCOM's application and accepted the Affidavit. (*See* April 23, 2019 Order.)

7

In the Affidavit, Logan explained the history of SmartCOM and its development of the MailGuard™ system in 2016 as a means of eliminating postal mail in the corrections setting, thereby improving efficiency and security. (Affidavit ¶¶ 4-13, R.R. at 41a-42a.) According to Logan, MailGuard is used in correctional facilities across the country and a number of other companies have sought to enter the business and compete with SmartCOM for contracts. (*Id.* ¶¶ 16-20, R.R. at 43a.) The Affidavit further detailed the Agreement between SmartCOM and the Department, to which the SOW was attached as an exhibit. As to the redacted paragraphs, the Affidavit provides, in pertinent part, as follows:

> 40. The [p]rotected [p]aragraphs include details about SmartCOM's propriety and secret method and process of scanning mail and providing electronic copies to corrections institutions.
>
> 41. Generally speaking, and for purposes of understanding and context, the [p]rotected [p]aragraphs describe how SmartCOM reviews and organizes information, maintains electronic and hard-copy records, and provides electronic records to [the Department] in a form that is convenient and easy for [the Department] to manage.
>
> 42. The [p]rotected [p]aragraphs also describe services that SmartCOM provides to enable institution access and review of scanned material.
>
> 43. The [p]rotected [p]aragraphs provide as follows:
>
>> a. Protected [p]aragraph 7 provides for SmartCOM to scan routine mail and prepare electronic files based on a specified protocol.
>>
>> b. Protected [p]aragraph 8 provides specified retention time periods for SmartCOM to retain routing mail.
>>
>> c. Protected [p]aragraph 9 provides for how SmartCOM will aggregate, sort, and organize scanned routine mail.

> d. Protected [p]aragraph 10 provides for SmartCOM to host a web application for [the Department] to access and use with certain specified capabilities and features.
>
> e. Protected [p]aragraph 11 provides for "Mail Carts," including the number and types of carts, electronic connections between the carts and systems, storage of information obtained on the carts, web applications for viewing and downloading of information obtained on the carts, tracking and auditing of cart information, and cart maintenance and repair.
>
> 44. It is not possible to provide further details beyond the above without disclosing SmartCOM's confidential and secret intellectual property.

(*Id.* ¶¶ 40-44, R.R. at 46a-47a.)

The Affidavit described the steps SmartCOM takes to ensure the redacted information is kept confidential, including allowing access to only three senior officers and counsel, all of which have contractual and fiduciary duties of confidentiality, electronic and security protocols, and computer password, cybersecurity measures, and physical file security measures. (*Id.* ¶¶ 45-50, R.R. at 47a.) According to Logan, SmartCOM informed the Department of the confidential nature of the information and requested it be notified of any RTKL requests seeking access to the Agreement and its parts and "specifically requested that the [Department] redact the [p]rotected [p]aragraphs before disclosing the Agreement publicly." (*Id.* ¶¶ 59-60, R.R. at 48a.)

In terms of harm that SmartCOM would suffer from disclosure, the Affidavit provided as follows:

> 63. SmartCOM's ability to compete in the corrections mail elimination marketplace largely depends on its ability to protect its unique blend of the MailGuard system (a special and unique mix of technology, products, and service offerings) and its associated pricing structure.

9

64. If SmartCOM's proprietary information depicted in the [p]rotected [p]aragraphs was disclosed, it would undermine SmartCOM's competitive position.

65. Indeed, public disclosure will allow one, some, or all of SmartCOM's competitors to adjust their own mail solutions and price offerings to undercut and undermine SmartCOM's market position in the country-wide corrections technology marketplace.

66. Specifically, competitors could steal SmartCOM's proprietary blend of technology, offerings, and pricing by simply copying it, slightly adjusting it, or otherwise refining their own products, services, and pricing to try to match or outbid SmartCOM in future contracting scenarios based on insights unfairly gained from SmartCOM.

67. A competitor could make minor adjustments to any of the items SmartCOM promised to [the Department] in the [p]rotected [p]aragraphs, or it could match SmartCOM's offering but slightly undercut SmartCOM's pricing.

68. Such minor adjustments could make all the difference between SmartCOM or a competitor obtaining a future contract or contracts.

69. Competitors could unfairly take advantage of SmartCOM's experience and significant investments in developing its proprietary information without having to make such investments or develop such experience on their own.

70. Competitors also could use the information gained to attempt to falsely or otherwise improperly or unfairly disparage SmartCOM and/or MailGuard.

71. Improper access by competitors to SmartCOM's proprietary information will also give competitors insights on SmartCOM's global strategies that it deploys for all contracting scenarios for incoming mail elimination.

72. Competitors could learn from this SmartCOM information and then use that information to undercut SmartCOM in future bidding scenarios.

73. This will unfairly tilt the competitive playing field in favor of SmartCOM's competitors and against SmartCOM, as SmartCOM does

10

not have its competitors' equivalent of the information in the [p]rotected [p]aragraphs.

74. Disclosure of the [p]rotected [p]aragraphs thus would cause substantial harm to SmartCOM's competitive position in the marketplace.

75. Indeed, since SmartCOM is exclusively in the business of corrections technology solutions, and MailGuard is a major part of SmartCOM's business, disclosure of the [p]rotected [p]aragraphs could be devastating to SmartCOM's competitive position.

(*Id.* ¶¶ 63-75, R.R. at 49a-50a.)

In addition, the Affidavit states the redacted information "has independent economic value because, if disclosed, it would furnish competitors with solid parameters by which they could refine their own strategies as part of their efforts to win businesses away from SmartCOM or otherwise cause SmartCOM to lose out in the marketplace." (*Id.* ¶ 79, R.R. at 51a.) This would be achieved, the Affidavit states, by competitors copying SmartCOM's intellectual property and adjusting their own products without having to invest any time, money, or energy. (*Id.* ¶¶ 76-78, R.R. at 50a-51a.) Logan reiterated in the Affidavit what he said in the Declaration: that SmartCOM invested significant time, capital, and effort to develop its product and refine it over time. (*Id.* ¶¶ 81-83, R.R. at 51a.) Finally, the Affidavit states that the specifics of the MailGuard system are not known by competitors and, therefore, cannot be duplicated. (*Id.* ¶¶ 84-85, R.R. at 52a.)

Following the filing of SmartCOM's brief in support of its petition for review, Requester filed two applications. The first application seeks to supplement the record (Application to Supplement) with two documents: (1) a copy of the Agreement between the Department and SmartCOM; and (2) a copy of Terms and Conditions, which were an exhibit to the Agreement, similar to the SOW. According

11

to the Application to Supplement, Requester obtained the documents in a separate RTKL request filed with the Department subsequent to the OOR's Final Determination. (Application to Supplement ¶ 8.) The second application requests that this Court conduct an *in camera* review of the redacted paragraphs, as the OOR did (Application for *In Camera* Review). SmartCOM opposes both Applications. With regard to the Application to Supplement, SmartCOM argues the documents have not been authenticated, it would be prejudiced by their consideration because SmartCOM had already filed its brief, and it disagrees the documents constitute the contract. With regard to the Application for *In Camera* Review, SmartCOM contends the Court generally does not conduct *in camera* reviews unless there is an assertion of attorney-client privilege or predecisional deliberations, neither of which is at issue here, it would suffer prejudice, and the agency, not a third party, provides the records.

On August 5, 2019, the Court issued an order directing consideration of the Requester's applications with the merits. As briefing is now complete, SmartCOM's Petition for Review and Requester's Application to Supplement and Application for *In Camera* Review are ripe for consideration.

## II. PARTIES' ARGUMENTS

On appeal,[5] SmartCOM argues its MailGuard system is protected as confidential, proprietary information and/or trade secrets. SmartCOM asserts it met its burden of showing that the information is kept in confidence and would cause substantial competitive harm if released, thus qualifying it as confidential, proprietary information. It notes that the OOR found that SmartCOM took steps in

---

[5] Our standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

12

maintaining the confidentiality of the redacted information, as only three senior officers and counsel had access to it. Thus, according to SmartCOM, the only issue is the harm that would result from disclosure. SmartCOM asserts it has shown it would suffer competitive harm in this highly competitive market because it invested significant time, money, and effort to develop the MailGuard system, and disclosure of the redacted information would allow competitors to do the same without any such investment. SmartCOM argues this Court has held the exemption in Section 708(b)(11) protects similar information in other cases. In support of this argument, SmartCOM cites to *Crouthamel v. Department of Transportation*, 207 A.3d 432 (Pa. Cmwlth. 2019), in which this Court found the exemption applicable to prices, supply quantities, and asphalt mix; *Smith on behalf of Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 161 A.3d 1049 (Pa. Cmwlth. 2017), in which the Court applied the exemption to protect information of a natural gas drilling diagnostic company; *Thirty, Inc. v. Smart* (Pa. Cmwlth., No. 805 C.D. 2013, filed April 14, 2014), in which the Court held hotel pricing information was protected by the exemption; and *Giurintano v. Department of General Services*, 20 A.3d 613 (Pa. Cmwlth. 2011), in which the Court concluded names of interpreters providing translation services were protected by the exemption. In addition, SmartCOM argues the redacted information constitutes trade secrets, which are also exempt from disclosure. SmartCOM asserts it has shown that the information is not known to outsiders and is only known to three officers within SmartCOM, is closely held in confidence, is valuable to competitors, was developed after significant investment of time, money, and sweat equity, and cannot be duplicated. Accordingly, SmartCOM asks the Court to reverse the OOR's Final Determination and order that the Department need not take further action.

Requester responds that because the SOW deals with an agency's acquisition of services, it is considered a financial record under the RTKL and, as a result, even if the information is otherwise confidential, proprietary information or a trade secret, it is still subject to disclosure, citing Section 708(c) of the RTKL and the Supreme Court's holding in *Department of Public Welfare v. Eiseman*, 125 A.3d 19 (Pa. 2015). Requester distinguishes this Court's decision in *Global Tel\*Link* on the basis that *Global Tel\*Link* involved records to show the financial stability of a bidder, whereas here, the issue is the provision of goods or services directly. Requester also argues that the Department's response to the Request supports the conclusion the SOW is part of the contract between the Department and SmartCOM. Requester notes he requested "the portion of the **contract** with Smart[COM]" that provides for the amount of time SmartCOM has to process mail, and in response the Department provided the redacted SOW, which shows the Department considered it a contract for services, which constitutes a financial record under the RTKL. (Requester's Brief (Br.) at 16 (quoting R.R. at 9a) (emphasis added).) Requester also points out that SmartCOM itself acknowledges the redacted paragraphs describe services that SmartCOM provides to the Department. Because the SOW is a financial record and neither confidential, proprietary information nor trade secrets are an enumerated exception to financial records, Requester argues the SOW should be disclosed in its entirety.

Even if the SOW is not considered a financial record subject to disclosure, Requester argues, SmartCOM has not met its burden of showing the redacted information constitutes confidential, proprietary information. Requester contends the redacted information was not "received" by the Department, meaning SmartCOM developed it and provided it to the Department, as the RTKL requires,

14

but was developed in conjunction with the Department to serve the Department's specific needs. Therefore, since the SOW tailors SmartCOM's services to the Department's needs, Requester disputes SmartCOM's assertions that its ability to compete in the market depends on maintaining the confidence of the information. Moreover, Requester contends the Declaration and Affidavit are general and conclusory, and such statements are, under the law, insufficient. In addition, Requester argues SmartCOM has not met the test for trade secrets. According to Requester, there is no evidence that the redacted information is the type of information generally protected as a trade secret, such as a formula or compilation of data. Requester also notes that since the information was just recently developed, "it is unsurprising that this information is not widely[] known either within the company or outside the company." (Requester's Br. at 27.) Furthermore, Requester argues the record is devoid of any evidence of SmartCOM's corporate structure or internal functioning, which is necessary to assess "whether this level of secrecy or lack of knowledge within the workforce is typical[] or indicative of information amounting to a trade secret." (*Id.*) According to Requester, "[i]t seems unremarkable that only senior officers in a company would be privy to the contractual negotiations and contractual documents entered into by that company." (*Id.*) Similarly, Requester argues SmartCOM only provided general allegations about the money and time it expended, and there is no evidence of the ease or difficulty in duplicating the information. As SmartCOM failed to satisfy its burden of proving the redacted information is confidential, proprietary information and/or trade secrets, Requester asks the Court to affirm the Final Determination of the OOR and direct the Department to provide an unredacted copy of the SOW.

In its reply brief, SmartCOM asserts that the fact the SOW was appended to the Agreement does not transform the SOW into a financial record and cites *Global Tel\*Link* for support of that proposition. SmartCOM argues the Agreement sets out the parties' mutual promises, "[o]r, in RTKL 'financial record' terms," the "'Agreement' . . . is the 'contract' dealing with 'disbursement of funds by an agency,'" whereas the SOW describes how SmartCOM will furnish the scanned mail to the Department. (SmartCOM's Reply Br. at 2 (quoting Section 102 of the RTKL, 65 P.S. § 67.102[6]).) SmartCOM reiterates that it has satisfied its burden of proving the asserted exemption. It notes Requester has not submitted any evidence to rebut SmartCOM's evidence and asserts Requester is "attempt[ing] to elevate Smart[COM]'s burden of proof." (*Id.* at 6.) It contends it has no obligation to provide corroborating documents to support its claims, as the courts have recognized that affidavits alone will suffice for a party to meet its burden. SmartCOM also denies its Declaration and/or Affidavit are general or conclusory, asserting its evidence is similar to evidence accepted by the Court in other cases. SmartCOM asserts many of Requester's arguments "rely on the OOR's unfounded guesswork," explaining that "[t]he OOR speculated that the [p]rotected [p]aragraphs contain 'nothing in the way of proprietary technical data or techniques for processing mail'" and "imagined that a 'level of personalization [was] required by the Department,'" which is unsupported by any evidence. (*Id.* at 8 (quoting Final Determination at 10).) According to SmartCOM, Requester "ignores" that the OOR found SmartCOM took reasonable steps to maintain the redacted information in confidence. (SmartCOM's Reply Br. at 8.) SmartCOM also argues there is no

---

[6] SmartCOM cited Section 101 of the RTKL, 65 P.S. § 67.101, but that provision relates to the short title of the statute. Section 102 contains the definition of financial record that SmartCOM quotes.

16

evidence it collaborated with the Department to develop the information in the SOW; even if the information is newly developed, it does not mean it is not protected intellectual property; and there is no explanation how disclosure of SmartCOM's intellectual property will promote government accountability, one of the purposes behind the RTKL.

## III. DISCUSSION

"[T]he objective of the [RTKL] . . . is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012.) Thus, with this purpose in mind, we must "liberally construe the RTKL to effectuate its purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013) (quoting *Allegheny Cty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)).

Pursuant to Section 305(a) of the RTKL, "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record." 65 P.S. § 67.305(a). However, the RTKL exempts certain information from disclosure. Among a number of enumerated exceptions are confidential proprietary information and trade secrets. 65 P.S. § 67.708(b)(11). The term "[c]onfidential proprietary information" is defined as:

Commercial or financial information received by an agency:

(1) which is privileged or confidential; and

(2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information.

65 P.S. § 67.102.

The term "[t]rade secret" is defined as:

Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:

(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* We generally examine six factors to determine whether information constitutes a trade secret:

(1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to [an individual's] business and to competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 392 n.15 (Pa. Cmwlth. 2015).

"Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Pa. Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1122 (Pa. Cmwlth. 2015). The party asserting the exemption bears the burden of proving the record is

exempt by a preponderance of the evidence. 65 P.S. § 67.708(a). "The preponderance of the evidence standard, which is 'the lowest evidentiary standard, is tantamount to a more likely than not inquiry.'" *Smith Butz*, 161 A.3d at 1059 n.10. It is well settled that "[a]n agency may meet its burden through an unsworn attestation or a sworn affidavit." *Schackner*, 124 A.3d at 393. However, the affidavit or attestation "must be specific enough to permit this Court to ascertain how disclosure . . . would reflect that the records sought fall within the proffered exemptions." *Id.* "[C]onclusory affidavits, standing alone, will not satisfy the burden of proof." *Office of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). Moreover, "an affidavit which merely tracks the language of the exception it presupposes is insufficient to demonstrate that the responsive records are exempt from disclosure." *Pa. State Police v. Muller*, 124 A.3d 761, 765 (Pa. Cmwlth. 2015).

Before determining whether the redacted paragraphs at issue here are confidential, proprietary information and/or trade secrets, we must first determine whether the SOW in which the redacted paragraphs appear is a financial record, as Requester contends. If the SOW is a financial record, the exception in Section 708(b)(11) of the RTKL does not apply, as redactions to financial records may only be made pursuant to certain enumerated exceptions, and Section 708(b)(11) is not one of those exceptions.[7] 65 P.S. § 67.708(c).

The RTKL defines "[f]inancial record" as:

(1) Any account, voucher or contract dealing with:

(i) the receipt or disbursement of funds by an agency; or

---

[7] Section 708(c) provides, in relevant part, "[t]he exceptions set forth in subsection (b) shall not apply to financial records, except that an agency may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16), or (17). . . ." 65 P.S. § 67.708(c).

(ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property[; or]

(2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee[; or]

(3) A financial audit report. The term does not include work papers underlying an audit.

65 P.S. § 67.102. It is under this first part of this definition that Requester claims the SOW falls. According to Requester, the SOW is a contract that deals with the Department's acquisition or use of services. SmartCOM acknowledges the SOW was appended to the Agreement it had with the Department, but contends that, pursuant to *Global Tel*Link*, that alone does not transform the SOW into a contract.

In *Global Tel*Link*, the record at issue was information about the financial well-being of a bidder that was attached to the contract to demonstrate the bidder had the financial strength to perform the contract. 147 A.3d at 981. We held that this financial information did "not automatically become a contract merely because [the Department] attache[d] it to the subsequently executed contract." *Id.* Instead, we examined the record itself to determine its status. There, we examined the financial information and determined it "did not involve the disbursement of funds or the acquisition of services. Rather, the [f]inancial [i]nformation was submitted to show [the bidder]'s economic capability to perform should it receive the . . . contracts." *Id.* Thus, we agree with SmartCOM that the mere fact the SOW was appended to the Agreement does not automatically transform it into a financial record. *Id.* However, this is not Requester's argument. Requester argues the SOW is subject to disclosure under subsection (1)(ii) of the financial record definition as a "contract dealing with . . . an agency's acquisition, use or disposal of services,

20

supplies, materials, equipment or property." 65 P.S. § 67.102(1)(ii). Requester's argument in this regard is twofold. First, Requester argues that the Request sought "the portion of the contract with Smart[COM]" that provides for the amount of time SmartCOM has to process mail, (R.R. at 9a), to which the Department responded by providing a redacted copy of the SOW. Therefore, the Department acknowledged the SOW is part of the contract by producing it. Second, Requester argues that an examination of the SOW's content reveals it is part of a contract for the acquisition of services.

SmartCOM focuses on subsection (1)(i) of the definition, dealing with the receipt and disbursement of funds, which is also the subsection discussed by the majority of the case law examining the definition of financial records. For example, our Supreme Court explained "records bearing a sufficiently close connection to such 'fiscally related' categories," such as accounts, vouchers, and contracts, are financial records "so long as they also 'deal with the receipt or disbursement of funds by an agency.'" *City of Harrisburg v. Prince*, 219 A.3d 602, 612 (Pa. 2019) (quoting *LaValle v. Office of Gen. Counsel*, 769 A.2d 449, 456 (Pa. 2001), and *N. Hills News Record v. Town of McCandless*, 722 A.2d 1037, 1039 (Pa. 1999)). However, the Supreme Court also recognized that the term also encompassed **accounts, vouchers, and contracts themselves**. *Id.* It further stated, as prior cases have, that the definition of financial record is "broad." *Id.*

Therefore, while there is no discussion of the receipt or disbursement of funds in the SOW, our inquiry does not stop there. We must also examine whether the record is an "account, voucher, or contract dealing with . . . an agency's acquisition, use or disposal of services, supplies, materials, equipment or property," which is a second prong of the definition. 65 P.S. § 67.102(1)(ii). We agree with Requester

21

that the SOW is a financial record. Although SmartCOM denies the SOW is part of the Agreement with the Department, the Department clearly thought otherwise because it produced a copy of the SOW, in response to the Request seeking "the **portion of the contract** with Smart[COM]" that provides for the amount of time SmartCOM has to process mail. (R.R. at 9a (emphasis added).)

In addition, a review of the SOW, a redacted copy of which appears in the record, supports this conclusion. The SOW begins by stating that the Department "requires an offsite solution for the receipt and processing of inmate postal mail" and "SmartCOM in providing the solution **shall meet the following requirements.**" (R.R. at 10a (emphasis added).) The SOW then lists a number of requirements that SmartCOM must satisfy, including providing equipment and support services, how to handle certain mail, its operational processing will mirror the United Postal Service's schedule, its obligation to maintain a mailbox, and the timeframe in which SmartCOM has to process mail, which is the information Requester sought in the Request. (*Id.* at 10a.) Although several paragraphs are redacted, from the unredacted portions of those paragraphs, the SOW also provides information on how the Department is to provide SmartCOM with certain information and outlines retention policies and scanning procedures. (*Id.*) In addition, it states SmartCOM will provide training on its web application, and it sets out the security standards with which SmartCOM shall comply. (*Id.* at 11a-12a.) Finally, it sets forth procedures upon termination or completion of the Agreement. (*Id.* at 12a.) These appear to be additional terms of the contract between the Department and SmartCOM.

Given the Department's implicit acknowledgement that the SOW was a "portion of the contract with Smart[COM]" that provides for the amount of time

SmartCOM has to process mail, (R.R. at 9a), and the broad definition of "financial record" as recognized by the Supreme Court in *Prince*, we conclude the SOW is a part of a "contract dealing with . . . [the Department]'s acquisition, use or disposal of services, supplies, materials, equipment or property," 65 P.S. § 67.102(1)(ii), namely SmartCOM's MailGuard system. These provisions set forth the services SmartCOM is to provide to the Department to fulfill its Agreement. Thus, it is a financial record subject to disclosure.

## IV.    CONCLUSION

Having concluded that the SOW is a financial record under the RTKL, it is not necessary to consider SmartCOM's argument that the exception in Section 708(b)(11) related to confidential, proprietary information or trade secrets applies because that exception is not one of the enumerated exceptions that may be redacted from financial records. 65 P.S. § 67.708(c). As the court stated in *Eiseman*, "[w]ith regard to such financial records, it is essentially undisputed that Section 708(c) renders the [RTKL]'s own internal trade-secrets/confidential-proprietary-information exception inapplicable." 125 A.3d at 32. Furthermore, unlike in *Eiseman*, there is no assertion by SmartCOM that the redacted information is also protected by Pennsylvania's Uniform Trade Secrets Act.[8]

---

[8] 12 Pa.C.S. §§ 5301-5308.

23

In addition, because it is unnecessary to examine the Agreement or the Terms and Conditions, Requester's Application to Supplement is denied. Finally, Requester's Application for *In Camera* Review is dismissed as moot.[9]

_____

**RENÉE COHN JUBELIRER,** Judge

_____

[9] Although a review of the unredacted SOW is unnecessary given our disposition, we note that all records reviewed by the agency, even *in camera*, are considered part of the certified record, although they may be sealed and filed separately. SmartCOM, which objects to our *in camera* review of the unredacted SOW, appears to misapprehend our prior decisions declining to review records *in camera*. In those instances, we were asked to review records that had not been reviewed by the OOR and were not part of the certified record. Here, in contrast, the OOR already conducted an *in camera* review of the records.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Smart Communications Holding, Inc., :
                            Petitioner :
                                         :
                     v. : No. 80 C.D. 2019
                                           :
Bruce Wishnefsky, :
                         Respondent :

# O R D E R

    **NOW**, July 6, 2020, the Final Determination of the Office of Open Records, dated December 27, 2018, is **AFFIRMED**. The Application to Supplement the Record filed by Respondent Bruce Wishnefsky (Requester) is **DENIED**. Requester's Application for *In Camera* Review is **DISMISSED AS MOOT**.

                                                          _____

                                                  **RENÉE COHN JUBELIRER,** Judge